**In re The ESTATE of Sam HARDWICK, Deceased.**

No. 6434.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 18, 1954.

Rehearing Denied Nov. 15, 1954.

Crenshaw & Griffith, Lubbock, Chester A. Oehler and Charles W. Tessmer, Dallas, for appellant.

Klett, Bean & Evans, Lubbock, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment admitting to probate the last will and codicil thereto of Sam Hardwick, deceased, upon the application of proponent Harold Shoulders, a grandnephew of deceased, named as a beneficiary and independent executor

thereof, joined also by proponents Abilene Christian College, Tipton Oklahoma Orphans' Home, Boles Orphans' Home and Sunny Glen Orphans' Home, each named as a beneficiary therein. Contestants are Mrs. Zannie Hardwick Hays, a surviving sister of testator, and several other named legal heirs next of kin of testator, all being sisters or children of pre-deceased brothers and sisters of the deceased testator.

The testator executed the said will on September 19, 1951, and added the codicil thereto on January 26, 1952, without making any material change in the will insofar as the issues here raised are concerned. He died on July 19, 1953, at the age of 78. His will, together with the codicil, was thereafter admitted to probate in the county court of Lubbock County, after a hearing was there had on a contest between the same parties heretofore named or designated. The grounds for contest of the will there presented by contestants were that the testator was not of sound mind or memory when he executed the will and that he was unduly influenced therein by Harold Shoulders, Rev. M. Norvel Young and B. Sherrod, acting for themselves and the proponents previously herein named. An appeal was thereafter perfected to the district court where contestants filed amended pleadings challenging the validity of the will for the alleged reasons that testator was incapable and did not have sufficient testamentary capacity to make a will, and that he was unduly influenced therein by the same persons previously herein named, as well as by Robert H. Bean, an attorney for proponents and the attorney who drew the will and codicil for testator. A hearing was there had to a jury which found that testator was of sound mind when he executed the will and also when he executed the codicil thereto. Judgment was accordingly rendered admitting the will to probate from which an appeal has been perfected.

Contestants have presented 41 points of error, some of which are lengthy. In our opinion, the controlling issues to be here determined are whether or not testator was mentally capable of making a will and whether or not he was unduly influenced by either of the parties herein named when he executed the same. We therefore do not find it necessary to prolong this opinion by discussing separately the 41 points presented, some of which only present evidentiary matters not considered material by us.

The record does not reveal the actual value of testator's estate but it appears to be worth from $300,000 to $500,000, consisting mostly of land and royalties with some personal property. The record further reveals that testator never had any children of his own. His first wife died in 1922, and he was thereafter married again in 1924, but was divorced from his second wife, Mrs. Florence Hardwick, in 1944. She is still living but was not a party to this suit. The record likewise reveals that the only change made by testator in the codicil to his will was that he changed the bequest made to the Board of Trustees of Abilene Christian College to Abilene Christian College, leaving off the Board of Trustees. Such was done for the convenience of the institution in handling the bequest at the proper time and such a change was voluntarily made by testator after his attention had been called to the matter by one of the Board members who had been apprised of the provisions of the will. The record also reveals that Rev. M. Norvel Young was Minister of the Church of Christ of Lubbock, of which testator was a member, and that he was also a member of the Board of Trustees of Abilene Christian College and that B. Sherrod was also a member of the said Church and a member of the Board of Trustees of Abilene Christian College.

Contestants complain first because the trial court refused to submit the issue of undue influence to the jury. It is conceded that proponents had the burden of proving that testator had mental capacity to execute the will and codicil and they contend such burden has been discharged and the jury so found. It was held in the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, that in a will case such as this, after mental capacity has been shown, the burden of prov-

ing undue influence rests upon the party contesting the probate of the will on such grounds. The court there further held that, generally, undue influence will not vitiate a will unless such influence was exerted at the time, under the facts and circumstances, so as to destroy testator's free agency and substitute therefor the influence of another which produced a will that testator did not desire to make. The court likewise there held that undue influence in its essential elements has no real relation to mental incapacity, since they constitute two distinct grounds for avoiding a will. One implies the lack of intelligent mental power while the other implies the existence of a mind of sufficient mental capacity to make a will, if not hindered and dominated by the influence of another. It is conceded, however, that a mind, though not unsound, may be so weak as to yield to undue influence of another if other essential elements of undue influence are satisfactorily shown in connection therewith. In connection with the issue of mental capacity the court further held in the Long case that a person of sufficient mental capacity may devise his property by will as he may see fit, so long as he transgresses no law in so doing and he is under no obligation to devise his property according to the laws of descent and distribution or according to any moral law; to ignore such laws is no grounds for setting aside his will. However, if testator has left a will that is unnatural in its terms and makes an inexcusable difference in those who ought to stand equal in his bounty, such may be considered along with other facts and circumstances in determining the question of undue influence. The Long case has since been consistently cited and the rules there announced uniformly followed.

The Long case was cited by the court in the case of Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 516 (writ refused), which court said in part:

"The issue of undue influence is not raised unless the record contains some admissible evidence of probative force that such influence was exercised, and

that it subverted and overpowered the will of testator and caused the execution by him of a will which he would not have executed but for such influence. Stewart v. Miller, Tex.Civ.App., 271 S.W. 311, pt. at page 316, writ refused; Rankin v. Rankin, 105 Tex. 451, 456, 151 S.W. 527."

 When these and all other rules concerning undue influence are applied to the evidence presented in this action, it clearly appears that an issue of the exercise of undue influence upon the testator as alleged was not raised by the evidence. On the contrary, the overwhelming weight of the evidence reveals that testator had accumulated a large estate, looked after his own business affairs, was a man of strong convictions, knew what disposition he wanted to make of his property, had his will and the codicil dispose of his property according to his own wishes, and that he had reasonably good health for a man of his age at the time he executed the will and codicil. Contestants therefore failed to discharge the burden of proof on undue influence as pleaded by them or to raise an issue concerning such, and the trial court properly refused to submit an issue concerning such to the jury. In re Caruthers' Estate, Tex. Civ.App., 151 S.W.2d 946; Cameron v. Houston Land & Trust Co., Tex.Civ.App., 175 S.W.2d 468; Gainer v. Johnson, Tex. Civ.App., 211 S.W.2d 789; Jowers v. Smith, Tex.Civ.App., 237 S.W.2d 805; Black v. Black, Tex.Civ.App., 240 S.W.2d 458; Curry v. Curry, Tex., 270 S.W.2d 208.

 Contestants further charge that the trial court erred in overruling their motion for an instructed verdict for the alleged reasons that the evidence conclusively showed undue influence had been exerted upon testator, which question has already been herein determined adversely, and further charged that proponents wholly failed to discharge the burden of proof as to decedent's testamentary capacity to execute the will and codicil.

Proponents presented 8 non-expert witnesses, namely: James H. Kimmel, a sales-

man; George Coke, a farmer; B. F. Hodges, a business man; John T. Smith, a minister; Gilmer G. Aycock, a business man and a neighbor to testator; C. C. Cox, a farm manager; Paul Hardwick (not related to testator), a banker; and, Robert H. Bean, an attorney. All of them testified they had known testator for periods of time ranging from 5 years to 25 years immediately preceding his death; that they had been often associated with him in a business way or in a social way, or both, during which time they had observed his habits, conduct, disposition, temper, peculiarities, manner of expression, and were well acquainted with his general characteristics. They each further testified that they knew testator's mental condition and in their opinions, respectively, testator was of sound mind during the period of time they had each known him. Some of the said witnesses testified that testator knew the general nature and extent of his property, was a good business man, had a strong will power and that he was of sound mind on September 19, 1951, and on January 26, 1952, the dates, respectively, that the will and codicil were executed. Other witnesses gave testimony corroborating that given by these witnesses as to testator's active life, business ability and alert mentality. There was no evidence admitted of any probative force to the contrary. No witness should be permitted to testify specifically that in his opinion any testator has or has not mental capacity to make a will or execute any other kind of an instrument, or that he is or is not capable of making such a will or executing such an instrument. Hudson v. Fuson, Tex.Civ.App., 15 S.W.2d 166; Bell v. Bell, Tex.Civ.App., 248 S.W. 2d 978. However, it has been consistently held that a non-expert witness may express an opinion in such a case as to whether or not testator was of sound or unsound mind, provided the witness states enough related facts based on his acquaintance with or knowledge of the testator's habits, conduct, expressions, peculiarities, disposition, temper or such other characteristics of testator to support a conclusion or an opinion about the matter. Bell v. Bell, supra; Jow-

ers v. Smith, Tex.Civ.App., 237 S.W.2d 805; Miguez v. Miguez, Tex.Civ.App., 221 S.W.2d 293; Whatley v. McKanna, Tex. Civ.App., 207 S.W.2d 645; Kutchinsky v. Zillion, Tex.Civ.App., 183 S.W.2d 237; Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 626, 36 L.R.A. 64.

It is our opinion that the facts related by each of the said witnesses upon which they base their respective opinions to the effect that testator was of sound mind on the dates and occasions in question were sufficient to support their respective conclusions and opinions expressed and that such constituted competent evidence on the issue of testator's mentality to execute the will and codicil being here under attack. It is our opinion further that the undisputed evidence so overwhelmingly establishes the sound mental capacity of testator to execute the said will and codicil as to conclusively establish his sound mental condition to so act. For that reason, it would have been proper for the trial court to have sustained proponents' motion for an instructed verdict presented after the evidence closed, upon the grounds that the evidence conclusively revealed that testator was of sound mind at the time he executed the will and codicil and there was no evidence of undue influence. Such being our conclusion, other assignments of error become immaterial and the trial court's judgment should be affirmed.

■ Nevertheless, the evidence certainly supported the jury findings upon which the trial court based its judgment. Contestants complain because the trial court inquired of the jury as to whether or not testator was of sound mind at the time he executed the will and codicil, rather than to inquire as to whether or not he possessed sufficient testamentary capacity to execute the will and codicil. However, contestants themselves first raised the issue of whether or not testator was of sound or unsound mind by pleading originally that testator was of unsound mind when he executed the will and the case was heard on that issue made by them in the county court.

In submitting the issues to the jury, the trial court gave the following instructions:

"By the term 'sound mind' as used in this charge is meant that the person making the will or codicil must, at the time the instrument is executed, have sufficient ability to understand the business in which he is engaged, the effect of his acts in making the will, the capacity to know the natural objects of his bounty and their claims upon him, and the general nature and extent of his property."

The definition there given is the same in substance as the definition of the term "testamentary capacity" given by the trial court in the case of Nass v. Nass, Tex.Civ.App., 224 S.W.2d 280, affirmed 149 Tex. 41, 228 S.W.2d 130. The court there held that the term "sound mind" as defined by the courts is the same as "testamentary capacity." For these reasons, contestants' complaints to the contrary are overruled.

■ Contestants further charge that the testimony of B. Sherrod, Rev. M. Norvel Young, Robert H. Bean and Harold Shoulders violated the provisions of Article 3716 V.A.C.S., known as the "dead man's statute," and that it was unethical for Robert H. Bean, one of proponents' counsel in the case, to testify in the case. These charges are overruled. Texas & N. O. R. Co. v. Webster, Tex.Civ.App., 53 S.W.2d 656, affirmed 123 Tex. 197, 70 S.W.2d 394; International Order of Twelve Knights and Daughters of Tabor v. Fridia, Tex.Civ. App., 91 S.W.2d 404; Combs v. Howard, Tex.Civ.App., 131 S.W.2d 206; Olschewske v. Priester, Tex.Com.App., 276 S.W. 647. It has been held that an attorney for the proponents in such a case is not rendered incompetent to testify, especially if he drafted the will in question and if he has not been employed upon a contingent fee, as the record shows the facts to be here. Hudson v. Fuson, Tex.Civ.App., 15 S.W.2d 166. The record reveals that Robert H. Bean was a witness to both the will and the codicil but each was also witnessed by two other witnesses who could have testified, insofar as the record reflects. It likewise appears that contestants for the first time charged in the district court that Robert H. Bean exerted undue influence upon testator. Such a charge was apparently made after Robert H. Bean had been employed by proponents and had participated in the contest heard in the county court. Because of such charge having been so made, it would appear that Robert H. Bean was drawn into the disputed issues of the case by contestants after he had been employed by proponents, for which reasons we think he was justified in giving his testimony in the case. The charge made against Robert H. Bean of being unethical in the matter is not well taken.

■ Contestants complain further about argument made to the jury by counsel for proponents concerning evidence that had been withdrawn from the jury by the trial court upon the motion of contestants. The record reveals that contestants, Mrs. Zannie Hays, a sister of testator, and Mrs. Fannie Lou Head, a niece of testator, both testified over the objections of proponents to the effect that in their opinions, respectively, testator was of unsound mind on the given dates when they saw him last. The testimony of these two witnesses as to this matter only was later withdrawn from the jury upon the motion of the contestants themselves. In argument to the jury, counsel for proponents did not attempt to discuss the testimony further than to say the withdrawal of such testimony given by these two witnesses concerning this matter left the record wholly without any testimony to the effect that testator was of unsound mind when he executed the will and codicil, while proponents offered the testimony of many witnesses who knew testator well and who testified he was of sound mind at such times and at all times from the time they first knew him until he died. Counsel did not apprise the jury of anything they did not already know. If such argument constituted error it could not have been a prejudicial error that would require a reversal and it was certainly a harmless error if any error was committed, particularly in view of the disposition made by us of other matters previously herein discussed.

A careful examination of the record and of contestants' points of error reveals no reversible error, if in fact any error was committed by the trial court. Contestants' points of error are all therefore overruled and the judgment of the trial court is affirmed.